IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALBERT BRADY, | ) | CV. NO. 05-00144 HG/KSC |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION TO |
| | ) | DENY PLAINTIFF'S MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT AND TO GRANT |
| | ) | IN PART and DENY IN PART |
| HALAWA CORRECTIONAL FACILITY | ) | DEFENDANTS' CROSS-MOTION FOR |
| MEDICAL UNIT STAFF, CLAYTON | ) | SUMMARY JUDGMENT |
| FRANK, Warden, DR. JOHN DOE, | ) | |
| SHARI KIMOTO, and MARY | ) | |
| TUMINELLO, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND TO GRANT IN PART AND DENY IN PART
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff Albert Brady's[1] Motion for

Summary Judgment ("Plaintiff's Motion") and Defendants Halawa

Correctional Facility ("HCF") Medical Unit Staff, Clayton Frank,

and Mary Tumminello's Cross-Motion for Summary Judgment

(Defendants' Cross-Motion").[2]   These Motions were referred to

---

[1] Brady is a Hawaii state prisoner, currently incarcerated
at Tallahatchie County Correctional Facility ("TCCF"), proceeding
*pro se* and *in forma pauperis* in this prisoner civil rights
action.

[2] The Court here addresses several procedural issues that
have arisen, which are perhaps due to Mr. Brady's *pro per* status.
In his Motion, Brady states that in September 2005, he filed a
"response" to Defendants answer to the Complaint, in which he
stated: "Summary Judgment be Rendered in the Affirmative on
Behalf of the Plaintiff." (Pl.'s Motion at 2.)   He complains that
this reference was never treated by the court or Defendants as a
Motion for Summary Judgment pursuant to Rule 56 of the Federal
Rules of Civil Procedure.   Brady next states that in late
February 2006, he filed a pleading captioned "Motion for Summary

this court by Local Rule 72.4 pursuant to 28 U.S.C. § 636(b)(1).
For the following reasons this Court finds and recommends that
Plaintiff's Motion be denied and that Defendants' Cross-Motion be
granted in part and denied in part.

## BACKGROUND

Brady alleges that Defendants HCF Medical Unit Staff, Warden
Clayton Frank, Mainland Contract Monitor Shari Kimoto,[3] Nurse
Supervisor Mary Tumminello,[4] and an unnamed HCF doctor

---

Judgment Fed.R.Civ.P (56); Disclosure of Non-Expert Witnesses,"
and again this document was not treated as a motion for summary
judgment.  Brady admits, however, that "[n]o actual motion for
summary judgment was attached nor included. Only a witness list
was disclosed" but nonetheless complains that [n]o defendant
summary judgment answer was filed."  (*Id.* 2-3.) Finally, at the
hearing on the present Motions, Defendants' attorney informed the
Court that she had received a "Reply" from Brady the day before
the hearing, which was not filestamped.  The Court has never
received a copy of this document.

Brady is informed that "[p]ro se litigants must follow the
same rules of procedure that govern other litigants." *King v.
Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). While the Court is
aware that it must liberally read Brady's pleadings, the Court
cannot and will not construe Brady's simple statements, which are
more accurately seen as prayers for relief, as motions. Moreover,
although Brady did file a document titled "Disclosure of Non-
Expert Witnesses," on January 30, 2006, he did not file any
document in February 2006, or at any other time, captioned as a
motion for summary judgment and a disclosure of non-expert
witnesses. As to the "Reply" that Defendants' apparently
received, but which has never been filed with the court, it
cannot be considered when determining the present Motions.

[3]Although Shari Kimoto is named in the Complaint, she is not
a party to Defendants' Motion because she has never been served.
The Court will address this issue more fully below.

[4]Tumminello is now the HCF Clinical Services Section
Supervisor, however, when the actions herein allegedly occurred,
she was an HCF Nurse Supervisor.

(collectively "Defendants"), acted with deliberate indifference to his serious medical needs when they intentionally denied his allegedly necessary hernia surgery while he was incarcerated at HCF and then allowed him to be transferred to an out-of-state facility despite his alleged need for this surgery, causing him further pain and suffering.  Brady's Complaint seeks compensatory and punitive damages only.

### FACTS[5]

Brady was incarcerated at HCF on April 16, 2004.  Brady claims that he fell from his upper bunk on April 20, 2004, and suffered an abdominal hernia.  On April 27, 2004, Brady submitted a medical request form, stating that he had a hernia that "need[s] to [be] fix[ed] as soon as possible." (Pl.'s Ex. A-1.) Three days later, on April 30, 2004, Brady was seen at the HCF medical unit sick call for two complaints: his hernia, which the nurse noted he had received while "working out," and a cold.[6] (See Defs.' Ex. B at 22.)  The nurse consulted with the prison doctor, Salvatore Abbruzzese, M.D., who ordered that the hernia be rechecked in two weeks.  Brady was given ibuprofen, Amoxicillin, and Q-tussin. (Id.)  At the hearing, Brady stated

---

[5]The facts herein are taken from Plaintiff's and Defendants' Motions and documents in support.

[6]Brady disputes this statement, averring that he told the nurse he hurt himself climbing from his bunk and noticed the hernia was protruding and painful later, when he was working out. (See Pl.'s Op. at 3.)

-3-

that he continued to take 200 mg. of ibuprofen while he remained at HCF.

One week later, on May 6, 2004, Brady was seen again at sick call complaining of nail fungus on his foot. (Defs.' Ex. B at 21.) He was referred for a podiatry consult.  There is no mention of the hernia in the notes pertaining to this visit.  Brady was seen again the next week, on May 11, 2004, but apparently did not mention his hernia at that time either, as there is no reference to it in his medical chart.

Between May 20 and June 6, 2004, Brady submitted six medical requests relating to his hernia, requesting surgery and complaining of escalating pain.  (*See* Pl.'s Ex. A-2-A-8.[7]) There is a response on one request, dated May 29, 2004, stating "Hernia - you were seen 5/11 it was address[ed.]"[8]  (*Id.*)  According to his medical records, however, Brady's hernia problems were discussed when he was seen on May 27, 2006.  (*See* Defs.' Ex. B at 21 & Pl.'s Ex. A-5, response to Med. Req.)

On June 2, 2004, Brady submitted a grievance stating that he was experiencing pain from his hernia and needed medical

---

[7]Several of the medical request copies that Brady provides are simply duplicates of each other.

[8]As noted above, Brady's medical file shows that while he was seen on May 11, it is not noted on the form that his hernia problems were discussed.  On May 27, 2004, however, two days before this response, Brady was seen again and his hernia was discussed.

attention as soon as possible, although his medical records show that he had been seen at least four times by this date. (Pl.'s Ex. B-1.) Defendant Tumminello was assigned the grievance on June 3, 2004. (Tumminello Dec. ¶ 5.) Tumminello reviewed Brady's medical records and determined that Brady was seen at prison sick call on April 30, 2004, for his hernia and was to have his hernia rechecked in two weeks. She also noted that Brady was seen again at the Chronic Care Clinic on May 11, 2004, for his asthma, and that he was told to notify the Medical Unit of his upcoming parole determination, so that an appointment could be scheduled for his hernia problem if he was not released.[9] Tumminello responded to Brady's grievance by informing him that, although he failed to notify the medical unit about the results of his parole decision, he would be scheduled for an appointment with a physician to re-evaluate his hernia. (Defs.' Ex. A.) On June 8, 2004, Tumminello noted in Brady's medical records that he should be scheduled for an appointment with Dr. Abbruzzese for hernia evaluation. (Defs.' Ex. B at 20.)

---

[9]Tumminello states that Brady did not inform the Medical Unit that he was denied parole. Brady argues that, since he was not paroled, he was not "compelled" to notify the medical unit. (Pl.'s Op. at 4.) Brady did continue submitting medical requests for hernia care after this visit, which presumably notified them that he was still incarcerated at HCF. (*See also* Pl.'s Ex. B-2 ("I agree, I was told by the nurse practitioner information was needed after my parole hearing. I sent the information to the medical unit per request a few days after the parole decision.") None of his medical requests or grievances, however, specifically state that he was denied parole.

This was Tumminello's only interaction with Brady.

Brady was seen by Dr. Abbruzzese the next day, June 9, 2004. Abbruzzese states that Brady's main complaint that day was a fungal infection on his foot and his desire to see a podiatrist. (Abbruzzese Dec. ¶ 3.) Abbruzzese did, however, fully examine Brady and noted that his left inguinal hernia was easily reducible.[10] Abbruzzese determined that Brady's hernia was not incarcerated, or trapped, or strangulated. (*Id.* ¶ 5.) When a hernia is incarcerated, stool is unable to pass through the intestine and may cause pain, nausea, vomiting and abdominal swelling. (*Id.*) A strangulated hernia, which is rare, occurs when a loop of the intestine is trapped tightly and the blood supply is cut off, and requires immediate surgery. (*Id.* ¶ 6.); *see also* Http://www.emedicine.com/emerg/topic251.htm.

Abbruzzese states that it appeared that the hernia was not new, as it was neither painful nor infected, and Brady was not in

---

[10]An inguinal hernia is a condition where the sac containing the intestine protrudes or descends into an opening in the abdominal muscle wall. (Abbruzzese Dec. ¶ 4.)"Easily reducible" denotes that the protrusion can be easily pushed back into place with gentle pressure. (*Id.*); *see also* Http://www.emedicine.com/emerg/topic251.htm. In an adult, an easily reducible hernia can be surgically repaired at a convenient time, and such surgery can be delayed for months. (Abbruzzese Dec. ¶ 4.); Http://www.usurg.com/news/Hernia.htm. ("A reducible hernia is generally not a medical emergency, and immediate surgery is not always indicated".)

acute distress.[11]   (*Id.* ¶¶ 7-8.)   Abbruzzese believed that, while surgery would eventually be required to repair Brady's hernia, such surgery was elective and there was no immediate or serious danger to his health.   (*Id.* ¶ 9.) Abbruzzese discussed the Ace bandages that Brady was using as a truss, which were apparently working well, and gave Brady additional wraps.   Brady did not ask for, nor did Abbruzzese prescribe, any pain medication at this visit.   (*Id.* ¶ 10.)   This was the only time that Abbruzzese saw Brady for his hernia.

On June 18, and June 27, 2004, Brady submitted two more medical requests, stating that he was in pain and requesting surgery.   (Pl.'s Exs. A-9 ("I have a hernia and it hurting[,] when will I get treated. Thank you"), A-10 ("I seek to see the doctor concerning my bad [hernia] condition for I am in pain & inability to walk at times.")   On June 20, 2004, Brady submitted his Step 2 grievance, complaining that he was still in pain and that his hernia was affecting his daily activities, at times keeping him from sleeping through the night.   (Pl.'s Ex. B-2.)

Deborah Stampfle, the HCF Clinical Services Branch Administrator, reviewed Brady's medical records and responded to Brady's Step Two grievance, stating:

---

[11] Of course, if Brady developed the hernia on April 20, 2004, as he alleges, more than a month had passed before Abbruzzese examined Brady, and the hernia would likely not be considered "new."

> You were seen by the doctor on 6/9/04 for
> multiple complaints. Your hernia is reducible
> and does not require surgery at this time.
> You have been placed on medical rec. for 3
> mos. Your care is appropriate.

On June 28, 2004, Brady was transferred to TCCF.  Prior to his transfer, an unnamed Nurse Supervisor at the HCF Medical Unit reviewed his medical records to determine whether there was any medical reason preventing his safe transfer to TCCF.[12]  She then prepared an Interfacility Discharge Summary for Brady, noting the current medications he was taking, that he had asthma, nail fungus, "PPD(+)," and a left inguinal hernia that required follow-up.  (Defs.' Ex. B at 19.)  Both Abbruzzese and Tumminello state that an inguinal hernia is not considered a medical condition that would prevent transfer to a mainland facility.  (Abbruzzese Dec. ¶ 13; Tumminello Dec. ¶ 19.)

Brady claims that Defendants transferred him to Mississippi with deliberate indifference to the pain that such a transfer would cause him.  Brady alleges, without support, that his plane flew at an altitude "exceeding 40,000 feet.  It is generally known that aircraft cabins are pressurized at 25% less than sea level pressure.  Reduction of ambient air pressure at altitude to a hernia patient guarantees intestinal protrusion."  (Pl.s' Op.

---

[12]In such a review, an inmate's prior six-months medical history is reviewed.  If there is a question regarding the inmate's condition a doctor is consulted.  (*See* Tumminello Dec. ¶ 9.)

at 6.) Brady alleges that because he was handcuffed and shackled to other inmates, he was unable to push the hernia back in when it protruded.[13]

Brady continued to complain of his hernia pain and his desire for surgery when he arrived in Mississippi. Although Brady stated at the hearing that his hernia care was delayed at TCCF because HCF failed to forward his medical records, Brady's own exhibits reflect that he was, in fact, seen several times at the TCCF medical clinic in July, August, and September 2004, and that his hernia was addressed at these visits. (Pl.'s Exs. A-11-A-19.) Brady also provides a "Physician's Order Sheet," dated July 5, 2004, which is less than a week after he arrived at TCCF, which diagrams his hernia, and has a notation stating "hernia belt refused." There is a later notation on this page which states, "Got belt 09-3-04." (Pl.'s Ex. A13.)

On October 6, 2004, Dr. Vincent Grant examined Brady's hernia, noted that it was easily reducible, but that it was painful and becoming more so on a daily basis. (Pl.'s Ex. A-23.) Grant noted that Brady had been to the prison medical clinic "multiple" times complaining. (*Id.*) Dr. Grant determined that the hernia needed surgical repair and Brady had the hernia surgery three weeks later, on October 28, 2004. After the

---

[13] Brady does not say whether he was allowed to use toilet facilities on his journey between Hawaii and Mississippi, and whether he was then able to manipulate his hernia.

surgery, Dr. Grant reported that there were no complications during or following surgery.  (Defs.' Ex. 3-B.)

## LEGAL STANDARD

Summary judgment shall be granted when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); *see also Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  *See id.* at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The moving party must identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." *Porter*, 419 F.3d at 891 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003); *Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv.*, 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. *Porter*, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. *Id.*

-11-

However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631.

### DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### I.   All Defendants Are Immune From Suit in their Official Capacities.

As a preliminary matter, Defendants argue that they are immune from suit for damages in their official capacities.  The Eleventh Amendment bars damage actions against state officials in their official capacities. *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).  In addition, "neither a State nor its officials acting in their official capacities are 'persons' under [42 U.S.C.] § 1983." *Will v. Michigan Dep't State Police*, 491 U.S. 58, 71 (1989) (citation omitted); *Lawrence Livermore Nat'l Lab.*, 131 F.3d at 839.  Defendants correctly argue that they are immune from suit for damages in their official capacities, and that they are not "persons" within the meaning of Section 1983 in their official capacities.  It is unclear from Brady's Complaint in what capacity he names

-12-

Defendants.  Insofar as Brady names Defendants in their official capacities, they are immune from suit for damages and the court is without jurisdiction over these claims.  Moreover, Brady's claims against Defendants named in their official capacities also fail to state a claim upon which relief may be granted.  This court FINDS and RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED as to all claims for damages against all Defendants in their official capacities.[14]

## II.  Defendants Were Not Deliberately Indifferent.

The Government violates the Eighth Amendment if it fails to address the medical needs of incarcerated individuals.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*).  "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment."  *Estelle*, 429 U.S. at 102.[15]  "A medical need is serious if the failure to treat the prisoner's condition could

---

[14]This holding would not bar claims for prospective declaratory or injunctive relief against any Defendant acting in an official capacity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-06 (1997); *Lawrence Livermore Nat'l Lab.*, 131 F.3d at 839.  Brady, however, does not seek such relief.

[15] For purposes of the Eighth Amendment, serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Lopez*, 203 F.3d at 1131.

result in further significant injury or the unnecessary and
wanton infliction of pain." *Dickey v. Vargo*, 2004 WL 825624, at
*2 (D. Or. Feb. 27, 2004) (citing *McGuckin v. Smith*, 974 F.2d
1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX
Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)
(further citations omitted). However,

> a complaint that a physician has been
> negligent in diagnosing or treating a medical
> condition does not state a valid claim of
> medical mistreatment under the Eighth
> Amendment. Medical malpractice does not
> become a constitutional violation merely
> because the victim is a prisoner. In order
> to state a cognizable claim, a prisoner must
> allege acts or omissions sufficiently harmful
> to evidence deliberate indifference to
> serious medical needs. It is only such
> indifference that can offend "evolving
> standards of decency" in violation of the
> Eighth Amendment.

*Estelle*, 429 U.S. at 106; accord *Lopez*, 203 F.3d at 1131.

A difference of opinion between medical professionals
concerning the appropriate course of treatment generally does not
amount to deliberate indifference to serious medical needs.
*Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). To establish
that a difference of opinion amounted to deliberate indifference,
the prisoner "must show that the course of treatment the doctors
chose was medically unacceptable under the circumstances" and
"that they chose this course in conscious disregard of an
excessive risk to [the prisoner's] health." *Jackson v. McIntosh*,
90 F.3d 330, 332 (9th Cir. 1996); *see also Hamilton v. Endell*,

981 F.2d 1062, 1067 (9th Cir. 1992) (stating that prisoner may demonstrate deliberate indifference if prison officials relied on the contrary opinion of a non-treating physician).

In deciding whether there has been deliberate indifference to Brady's serious medical needs, this Court is not required to defer to the judgment of prison doctors or administrators. *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1988); *Nelson v. Locke*, 2005 WL 1030207, *6 (E.D. Wash. May 2, 2005). However, the Ninth Circuit has recognized that a "difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. State of Or., State Welfare Division*, 662 F.2d 1337, 1344 (9th Cir. 1981).

A.   Defendant Frank is Entitled to Summary Judgment.

Brady claims that Frank is liable for his claims because, as HCF Warden, he has "a duty to ensure that all inmates are properly cared for health wise" and because Frank is "entrusted with the actual running of a correctional facility and all it[s] functions including adequate medical facilities[.]"  (Compl. at 2.)

There is no *respondeat superior* liability under 42 U.S.C. § 1983.  *Polk v. County of Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Social Services*, 436 U.S. 658, 692 (1978); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1185 (9th Cir.

2002).  To state a civil rights claim against an individual
defendant, a plaintiff must allege facts, not mere conclusions,
showing a defendant's "personal involvement" in the alleged
constitutional deprivation or a "causal connection" between a
defendant's wrongful conduct and the alleged constitutional
deprivation.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.
1998); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

A supervisor may be held liable in his individual capacity
"for his own culpable action or inaction in the training,
supervision or control of his subordinates." *Watkins v. City of
Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998) (quoting *Larez
v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)).  The
supervisor's conduct must show "deliberate indifference to the
known or obvious danger [to] plaintiff[.]"  *See L.W. v. Grubbs*,
92 F.3d 894, 900 (9th Cir. 1994).  A supervisor may also be held
liable if he or she implemented "a policy so deficient that the
policy itself is a repudiation of constitutional rights and is
the moving force of the constitutional violation." *Redman v.
County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)(en
banc).  However, an individual's "general responsibility for
supervising the operations of a prison is insufficient to
establish personal involvement." *Ouzts v. Cummins*, 825 F.2d
1276, 1277 (8th Cir. 1987).  Furthermore, vague and conclusory
allegations of official participation in civil rights violations

-16-

are not sufficient to state a claim. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

To survive Defendants' Cross-Motion, Brady must present evidence that establishes that Frank was in some manner personally involved and deliberately indifferent to Brady's serious medical needs, or that there was some other causal connection between Frank's alleged wrongful conduct and a constitutional violation. *See Redman*, 942 F.2d at 1446. Sweeping conclusory allegations will not suffice; Brady must "set forth specific facts as to each individual defendant's" deprivation of his protected rights. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). Brady, however, alleges no facts tying Frank to his claims, other than his own speculation that Frank was aware of his medical condition and did nothing to intervene, either by directing surgery to be performed at HCF or by countermanding Brady's transfer to Mississippi. Brady's claims against Frank are based solely on Frank's position as HCF Warden during the time at issue; this is Frank's only tie to Brady's claims.

The uncontroverted record shows that Frank was never made aware of Brady's medical complaints, either through his grievances or through his medical requests. (*See* Rivera Dec. ¶¶ 9-10 ("Grievances concerning medical issues are never routed to the Warden. Therefore, Warden Clayton Frank was not aware of

these issues."))   It is clear that Frank had no involvement with
or knowledge of the alleged delay or denial of medical care to
Brady.   Nor is there any evidence showing Frank was personally
involved in Brady's transfer to Mississippi.

Moreover, even if Frank had been aware of Brady's hernia
condition, Brady's desire for surgery, and the HCF Medical Unit
Staff's decision to withhold such surgery, this would be
insufficient to sustain a finding of deliberate indifference
against Frank.   Frank is not a trained doctor or a medical
professional, he is the Warden and overall administrator of the
prison.   As such, he is entitled to rely on the medical diagnosis
of the HCF Medical Unit and its doctors, who determined that
Brady did not need surgery at that time, although he might
require it later.   *See e.g., Johnson v. Doughty*, 433 F.3d 1001,
1010-12 (7th Cir. 2005) (holding that non-medical prison
personnel may rely on the expertise of medical professionals, and
are not deliberately indifferent by denying an inmate's grievance
based on the medical professionals' diagnosis of the inmate's
condition); *Bond v. Aguinaldo*, 228 F. Supp.2d 918, 920 (N.D. Ill.
2002) ("Except in the unusual case where it would be evident to a
layperson that a prisoner is receiving inadequate or
inappropriate treatment, prison officials may reasonably rely on
the judgment of medical professionals.").   In contrast to these
cases, where non-medical prison personnel were actually aware of

the prisoner's complaints and relied on medical professionals' diagnoses to deny grievances or other intervention, here, Frank had no knowledge whatsoever of Brady's condition or complaint.

This court finds that Brady has failed to link any conduct by Frank to his allegations of constitutional violations.  The fact that Frank was HCF Warden does not establish that link. Brady neither points to nor alleges a blanket policy or procedure implemented by Frank that denied hernia surgery to all inmates, resulting in any constitutional violation.  There are no facts showing that Frank was personally involved in any manner with Brady's medical care or in his transfer to Mississippi.  This Court recommends that Defendants' Cross-Motion be GRANTED as to all claims against Frank.

In Brady's Motion he argues that Frank is liable for failing to ensure that Brady's bunk bed had easier access, thus preventing his fall which allegedly resulted in the hernia. Although Brady's Complaint referred to his fall as the cause of his injury, Brady did not include the fall itself as a claim or cause of action in his Complaint.  Brady's three claims relate only to the medical care Brady received at HCF.  (*See* Compl. ¶¶ 12-14.)  There was no allegation of an Eighth Amendment violation due to lack of access to the bunk bed, and no facts whatsoever connecting Frank to this alleged lack of safe access.

First, as this new claim was not in the Complaint, it cannot

be alleged now and decided on a motion for summary judgment.
Second, for the reasons set forth above, enumerating why Frank,
as the HCF Warden, cannot be responsible for Brady's claims
without a personal connection to the alleged injury, Frank cannot
be liable for this new claim.  Brady presents no facts or
evidence showing that Frank was aware that Brady had difficulty
accessing his bunk, or that Frank had any knowledge that the
bunks posed an inherent danger, and that Frank acted in complete
disregard to that danger, with the necessary intent to
demonstrate deliberate indifference to Brady's, or any other
inmate's safety.  Frank cannot be held liable for this new
allegation.  This Court finds and recommends that Brady's Motion
be DENIED as to his claims against Frank.

     B.   <u>Tumminello is Entitled to Summary Judgment.</u>

     Tumminello's only involvement with Brady's claims is that
she handled his Step One grievance.  She was assigned the
grievance on June 3, 2004.  In processing his grievance, she
reviewed his medical records, determined that, although Brady had
been seen for his hernia condition, and had failed to promptly
notify the Medical Unit that he was denied parole so that they
could set up a follow-up appointment for him, that he should be
seen by the prison doctor for his complaint.  On June 8, 2004,
Tumminello noted in Brady's medical chart that he required an
appointment with Dr. Abbruzzese.  Brady was seen by Dr.

Abbruzzese the next day, June 9, 2004.  The record here is clear
that Tumminello's minimal involvement in Brady's care was far
from indifferent.  She was diligent, by carefully reviewing his
past medical records, and she was effective, by promptly
scheduling him to see the prison doctor.  As a matter of law, her
conduct does not exhibit deliberate indifference or constitute a
constitutional violation.  The Court finds and recommends that
Defendants' Cross-Motion be GRANTED as to all claims against
Tumminello and that Brady's Motion be DENIED.

> C.   Dr. John Doe and Defendant HCF Medical Unit Staff are
>      entitled to Summary Judgment.

In the Complaint, he names "Dr. John Doe, who will be named
in the future by and through an amendment of this complaint is
the person who cared for the plaintiff and diagnosed the
plaintiff with hernia tear on the left middle extremity torso,
instructed the Plaintiff that he is going to delay the operation
for a later date."  (Compl. at 2 ¶ 2.)  Brady claims that this
unnamed prison doctor violated the Hippocratic oath "TO DO NO
HARM."[16]  (*Id.* at 3.)  Although Brady's Complaint names the
"Halawa Correctional Facility Medical Unit Staff," in the caption
of his Complaint, he does not allege facts against any HCF
medical staff members, other than Tumminello and the Dr. John Doe

_____

[16] The Court notes that violation of the Hippocratic Oath,
in itself, does not state a claim for a constitutional violation.

named in his Complaint.

It is clear that Dr. Abbruzzese is the HCF doctor who diagnosed and treated Brady for his hernia.  Brady has had this information since at least May 1, 2006, when Defendants filed their Cross-Motion for Summary Judgment, but he has never moved to name Dr. Abbruzzese as a defendant.[17]  Thus, Dr. Abbruzzese is not a defendant to this action.  If, however, the still unnamed Dr. John Doe is, in reality, Dr. Abbruzzese, and considering Abbruzzese's declaration and the other uncontroverted facts now in the record, this Court finds that summary judgment is also appropriate against Brady's claims against Dr. John Doe and against the HCF Medical Unit Staff.

Brady does not dispute that the prison doctor, whether Dr. John Doe, or Dr. Abbruzzese, incorrectly diagnosed his inguinal hernia, or incorrectly determined that it was easily reducible, and was neither incarcerated nor strangulated.  It is clear that this diagnosis remained true even after Brady transferred to Mississippi.  (*See* Defs.'s Ex. 3-B, Docket No. 34-10, Dr. Grant's

---

[17] On December 27, 2005, Brady moved to amend his complaint "to properly name other defendants," and his motion was granted. Brady sought to name "John Peyton and Additional doe defendant," to his Complaint.  Brady, however, never actually submitted an amended Complaint, identifying John Peyton's connection to his claims, or explaining why additional doe defendants were required. It is now clear, with the benefit of a fuller record, that amendment of the Complaint to name John Peyton, who is an ex-Director of the Hawaii Department of Public Safety, would have been futile.

treatment notes ("[Plaintiff] has a left inguinal hernia which easily reduces in the fascia defect which is easily palpable.")) Nor does Brady specifically dispute Abbruzzese's statement that he was in "no acute distress," and did not seek additional or different pain medication.  (Abbruzzese Dec. ¶¶ 7 & 10.)  Nor does Brady deny that he told Abbruzzese that the Ace bandage "truss," was working well, and that he requested, and was given, more Ace bandages.

Instead, Brady asserts that the doctor was incorrect in taking a conservative approach to his hernia, and by refraining from scheduling surgery immediately, as Brady apparently would have preferred.  This conservative course of treatment, however, does not exhibit the required culpable state of mind needed to show deliberate indifference.  Brady's hernia was not ignored. He was given ibuprofen, which he continued to take while at HCF, he was instructed to use the Ace bandages as a truss which he told Dr. Abruzzese was helpful, he was put on three-months medical recreation, and his condition was monitored, both while he was at Halawa and when he arrived at TCCF.

Moreover, in the ten weeks that Brady was incarcerated at HCF, from mid-April to late June 2004, Brady was seen by HCF medical personnel, either at sick call, Chronic Care, or by a physician no less than seven times.  This does not support a showing of deliberate indifference to Brady' serious medical

needs, despite Brady's numerous medical requests stating that he was in pain and needed a hernia operation.  It is clear that Brady was seen almost weekly, was not in distress when Dr. Abbruzzese examined him, or on other occasions when he was seen, was given pain medication, and that he was not being ignored, although his demands for surgery were not accommodated.

Other than his own statements, Brady provides no competent evidence that HCF's treatment plan was medically unacceptable, or controverting Dr. Abbruzzese's medical diagnosis that, when he saw him, there was no immediate or serious danger to Brady's health, and that the hernia surgery was elective and not required.  Nor does Brady show that the delay in receiving surgery resulted in further injury.  *See Shapley v. Nev. Bd. of State Prison Com'rs*, 766 F.2d 404, 407 (9th Cir. 185) ("[M]ere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference.").  Although Brady argues that the delay resulted in more harm to him, this is not born out by Dr. Grant's post-operative report, which clearly states that the operation was a routine outpatient procedure and that there were no complications.

The Court notes, however, that although Defendants argue that Brady has failed to controvert Dr. Abbruzzese's declaration with medical evidence of his own, this, in itself, is not persuasive.  First, the record before the court establishes that

-24-

adequate medical services were provided to Brady.  Second,
considering Brady's *pro se* status, providing opposing medical
testimony is no doubt somewhat more difficult for him, although
not necessarily impossible.

Nor does Brady provide evidence that the prison doctor or
the HCF Medical Staff's decision, relying on the doctor's
diagnosis, allowing Brady to be transferred, was either
incorrect, or made with deliberate indifference to his condition
or to the possibility that the transport would be uncomfortable.
Dr. Abbruzzese states that "a hernia like [Brady's] is not
something that would keep an inmate from being transferred to
another facility[,]" (Abbruzzese Dec. ¶ 13.)  Brady's own
statements that air travel is contraindicated for hernia patients
are simply unsupported speculation and nothing more.

While it is unfortunate that Brady was, in fact,
uncomfortable during the eight-hour airplane journey, due in
large part to the handcuffs he was forced to endure, this does
not turn the decision to allow him to be transferred into a
conscious, culpable decision to inflict pain or to deliberate
indifference that he would be in such pain.  It may show
negligence, or even gross negligence, but it does not arise to
the level of deliberate indifference.

Nor did the prison doctor, HCF Medical Unit Staff, or anyone
at the Hawaii Department of Public Safety attempt to prevent or

interfere with Brady's medical care at TCCF.  In fact, Brady's
Interfacility Discharge Summary, generated by the HCF Medical
Unit, explicitly notified TCCF about Brady's hernia condition,
and advised that it should be followed when he arrived at TCCF.
Although Brady alleged at the hearing that his treatment was
delayed at TCCF due to HCF's failure to provide his medical
records, this allegation is not borne out by the medical records
Brady himself provides.  The fact that Brady was eventually given
the surgery he desired four months after he was transferred to
Mississippi does not alter the fact that Brady was sufficiently,
albeit conservatively, treated while at HCF.  Further, the fact
that Brady's hernia was monitored at TCCF, and that he was not
referred to a surgeon until October, and the surgeon did not
perform that surgery for three more weeks, supports Dr.
Abbruzzese's declaration that Brady's hernia did not require
immediate, emergency care.

A "difference of medical opinion . . . [is] insufficient, as
a matter of law, to establish deliberate indifference." *Jackson*,
90 F.3d at 332.  Rather, "to prevail on a claim involving choices
between alternative courses of treatment, a prisoner must show
that the chosen course of treatment 'was medically unacceptable
under the circumstances,' and was chosen 'in conscious disregard
of an excessive risk to [the prisoner's] health.'" *Toguchi*, 391
F.3d at 1058 (quoting *Jackson*, 90 F.3d at 332).  It appears that

Dr. Grant's decision to perform surgery was based on Brady's
claim that the hernia was becoming more painful daily, and that
Brady had been to the TCCF medical clinic complaining about this
on multiple occasions. (*See* Pl.'s Ex. A-23.)  It is not certain
that there was a difference in medical opinion here; had Brady
remained at HCF it is entirely possible that Dr. Abbruzzese would
have reached the same conclusion as Dr. Grant.

Accordingly, this Court FINDS that Dr. John Doe and the HCF
Medical Staff did not act with deliberate indifference to Brady's
serious medical needs, and RECOMMENDS granting Defendants' Cross-
Motion as to these claims and that Brady's Motion be DENIED.

III. Defendants are Entitled to Qualified Immunity.

Defendants also assert, in the alternative, that they are
entitled to qualified immunity.  This Court agrees.

*Saucier v. Katz*, 533 U.S. 194 (2001), sets forth a two-step
inquiry for determining whether qualified immunity applies.
First, "[t]aken in the light most favorable to the party
asserting the injury, . . . the facts alleged [must] show [that]
the officer's conduct violated a constitutional right."  *Id*. at
201.  This prong of the *Saucier* inquiry "mirrors the substantive
summary judgment decision on the merits."  *Sorrels v. McKee*, 290
F.3d 965, 969 (9th Cir. 2002).  "If no constitutional right would
have been violated were the allegations established," the inquiry
ends.  *Saucier*, 533 U.S. at 201.  If there appears to have been a

constitutional violation, however, the second step is to determine whether the right in question was "clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id.; Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004).

As detailed above, the facts alleged do not show that any Defendant violated Brady's constitutional right to be free from cruel and unusual punishment by failing to provide him with timely and adequate medical treatment for his hernia. *See Saucier*, 533 U.S. at 201. Thus, Defendants are entitled to qualified immunity for Brady's claims against them.

IV.  <u>Shari Kimoto.</u>

Although named as a defendant in Brady's Complaint, Shari Kimoto has never been served. On June 16, 2005, the Marshals attempted service on Kimoto using the address provided by Brady. This attempt was returned by the United States Postal Service as undeliverable at that address. Brady would have been notified of this failure by mail through the Marshals' Service office personnel. Brady should also have been put on notice that Kimoto was not served in August 2005, when he received Defendants' HCF Medical Unit, Frank, and Tumminello's answer to the Complaint and scheduling conference statement, which are conspicuously missing any reference to Kimoto. Similarly, Defendants' Cross-Motion, filed on May 1, 2005, does not include Kimoto or reference her

alleged involvement with Brady's claims.  Although he is proceeding *pro se*, Brady should have been aware of his failure to ensure that Kimoto was properly served.

Based on this Court's finding that the HCF Medical Unit Staff, and Dr. John Doe, was not deliberately indifferent by medically clearing Brady for transfer to Mississippi, however, Kimoto's limited involvement in that transfer, by relying on HCF medical personnel's statements that Brady's hernia would not prevent such a transfer, cannot support a finding of her deliberate indifference.  Prolonging this action to allow service upon Kimoto would, therefore, be futile.

V.   Brady's Claims are Exhausted.

Defendants assert that Brady failed to exhaust his claims through Step Three of the HCF grievance process and seek dismissal of the action on this basis.

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Although the district court at one time had discretion to permit a case to proceed without exhaustion, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory.  *See Porter v. Nussle*, 534 U.S.

516 (2002).

Exhaustion is an affirmative defense that defendants have the burden of proving; it should be raised in an "unenumerated" Rule 12(b) motion to dismiss rather than in a motion for summary judgment. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding an unenumerated Rule 12(b) motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. <u>Id.</u> at 1119-20. If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss for failure to exhaust, the court must give the prisoner fair notice of his opportunity to develop a record. *Wyatt*, 315 F.3d at 1120 n.14.[18] If the court concludes that the prisoner has not exhausted Hawaii's prison administrative process, the proper remedy is dismissal of the unexhausted claim or claims. *Id.* at 1120.

Hawaii prisoners may administratively exhaust their complaints and grievances pursuant to the Department of Public Safety's ("DPS") Policies and Procedures Manual (1992), section 493.12.03(4.0). These rules establish a three-step process for exhausting an administrative appeal. The inmate must submit a grievance at each step and wait either for a response to that

---

[18] Brady was not only given such notice by Defendants' Cross-Motion and Notice of Hearing, he has strenuously argued that he has exhausted his claims.

grievance or for the time for receiving a response to expire.
Only then may the prisoner move to the next step.  DPS Manual
§ 493.12.03.13–.15.

Here, Brady submitted Step One and Step Two grievances while
he was still at HCF.  He was transferred to TCCF before his Step
Two grievance was resolved, and Defendants claim that he was
notified that it had been denied sometime after he arrived in
Mississippi.  Defendants state that Brady had the opportunity to
complete the grievance process by filing a Step Three grievance
within five days of receipt of the denial of his Step Two
grievance, but did not do so.

It appears, however, that Brady was unclear how to proceed
with his grievance at HCF once he was transferred to TCCF.  On
July 16, 2004, Brady filed a grievance on the TCCF grievance
form, stating that he had previously filed both a Step One and
Step Two grievance concerning his hernia condition and had not
yet received a response.  (*See* Pl.'s Ex. B-3.)  At the hearing,
Brady stated that TCCF does not provide HCF grievance forms.

On August 25, 2004, Shari Kimoto, also apparently confused,
responded to Brady's July 16, 2004 "TCCF" grievance by explaining
the TCCF grievance process, and stating that TCCF had no record
of his "6/20/04" grievance. (*See* Pl.'s Ex. B-7.)  The "6/20/04"
grievance obviously refers to Brady's Step Two HCF grievance.
Kimoto then informed Brady that "Hawaii will only respond to

grievances pertaining to transfers.  All other matters regarding the running of the facility and its services must be handled through TCCF's Grievance Office." (*Id.*)  This statement is unclear; it appears that Kimoto was informing Brady that he could no longer grieve his hernia problems at HCF, who will "only respond to grievances pertaining to transfers." (*Id.*)

Under these circumstances, where it appears that Brady attempted to exhaust his grievance appeal, and was inadvertently thwarted by the two prisons' confusion over the matter, this Court cannot find that Brady did not exhaust his administrative grievances prior to commencing this action.  Brady did what he could, and through no fault of his own, was prevented from effectively exhausting his claims.  This Court finds that Defendants' Cross-Motion, insofar as it seeks dismissal for non-exhaustion of administrative remedies, should be DENIED.

### CONCLUSION

This Court FINDS and RECOMMENDS:

1.   That the Plaintiff's Motion for Summary Judgment be DENIED.

2.   That Defendants' Cross-Motion for Summary Judgment be GRANTED as to claims against all Defendants in their official capacities.

3.   That Defendants' Cross-Motion for Summary Judgment be GRANTED as to claims against Clayton Frank.

4.   That Defendants' Cross-Motion for Summary Judgment be GRANTED as to claims against Mary Tumminello.

5.   That Defendants' Cross-Motion for Summary Judgment be GRANTED as to claims against Dr. John Doe and the HCF Medical Unit Staff.

6.   That all Defendants are entitled to qualified immunity.

7.   That Shari Kimoto was never served with the Complaint; and that any attempt at service now would be both prejudicial to Defendants and futile.

8.   That Defendants' Cross-Motion for Summary Judgment, or Motion for Dismissal, be DENIED as to issue of Brady's administrative exhaustion of his claims.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, June 15, 2006.



_____
Kevin S.C. Chang
United States Magistrate Judge

BRADY v. HALAWA CORR. FAC., et al., CIV. NO. 05-00144 HG-KSC; FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO GRANT IN PART AND DENY IN PART DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; dmp\F&R 06\ Brady 04-144 (MSJs)